UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**HUBERT BRADFORD LEEKS,**

    **Petitioner,**

**v.**                                        Case No. 8:23-cv-22-MSS-SPF

**SECRETARY, DEPARTMENT OF CORRECTIONS,**

    **Respondent.**

_____

## ORDER

Hubert Bradford Leeks petitions for a writ of habeas corpus under 28 U.S.C. § 2254 and challenges his state-court convictions for trafficking in amphetamine, possession of hydromorphone, possession of cannabis, and possession of drug paraphernalia. After reviewing the petition (Dkt. 1), the response (Dkt. 8), and the appendix containing the relevant state-court record (Dkt. 8-2), the Court **DENIES** the petition.[1]

**I.    BACKGROUND**

On January 31, 2017, Detective Travis Worley responded to a motel in Polk County, Florida. (Dkt. 8-2, Ex. 28, at 33-34) He had received an anonymous tip that a "large transaction" of "illegal narcotics" had occurred in one of the rooms. (Id. at 34) Detective Worley went to the room and knocked on the door. (Id.) A voice from

---

[1] Leeks did not file a reply.

inside said, "Come in." (Id.) Detective Worley knocked on the door again, this time saying, "Lake Wales Police Department." (Id.) The same voice said, "Come in, bitch." (Id. at 35) Detective Worley entered the room and identified himself as "Detective Worley with the Lake Wales Police Department." (Id.) Inside the room, a man and a woman sat "next to a kitchen table with two yellow lines of powder . . . out on the table." (Id.) Leeks was lying on a bed. (Id. at 35-36)

On the nightstand next to Leeks, Detective Worley saw a "digital scale" and a baggie with a "green, leafy substance." (Id. at 37, 45-46) The substance was later identified as cannabis. (Id. at 44-45) Detective Worley also saw Leeks throw a second baggie under the bed. (Id. at 37-38) This baggie appeared to contain a "clear, crystal-like substance." (Id.) Law enforcement ultimately determined that the second baggie held hydromorphone pills and methamphetamine. (Id. at 81, 85, 87) After waiving his Miranda[2] rights, Leeks told Detective Worley that he sold "dope" and that "his intentions were to sell" the drugs he had thrown under the bed. (Id. at 55-57)

Leeks was charged with trafficking in amphetamine, possession of hydromorphone, possession of cannabis, and possession of drug paraphernalia. (Id., Ex. 3) He moved to suppress the drugs and his post-Miranda statements, arguing that Detective Worley "exceed[ed] the scope of any consent received" to enter the motel room. (Id., Ex. 21, at 19) Following an evidentiary hearing, the trial court denied the motion. (Id. at 10-11) The case went to trial. (Id., Ex. 28) A jury found Leeks guilty as

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

charged, and he received a total sentence of fifteen years' imprisonment. (Id., Exs. 5-6) After an unsuccessful direct appeal, Leeks moved for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Id., Exs. 13, 20) The postconviction court rejected Leeks's claims, and the appellate court affirmed in an unexplained decision. (Id., Exs. 21, 24) This federal habeas petition followed. (Dkt. 1)

## II.   LEGAL STANDARDS

### A.   AEDPA

Because Leeks filed his federal petition after the enactment of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), AEDPA governs his claims. Lindh v. Murphy, 521 U.S. 320, 327 (1997). AEDPA amended 28 U.S.C. § 2254(d) to require:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question

3

of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. Clearly established federal law refers to the holding of an opinion by the United States Supreme Court at the time of the relevant state-court decision. Id. at 412.

"[AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 694 (2002). A federal petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011).

### B. Ineffective Assistance of Counsel

Leeks asserts ineffective assistance of counsel—a difficult claim to sustain. Strickland v. Washington, 466 U.S. 668, 687 (1984), explains:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to

4

>   deprive the defendant of a fair trial, a trial whose result is reliable.

"There is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id.

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id. at 691. To demonstrate prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." Id. at 694.

Strickland cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Id. at 690-91. A defendant cannot meet his burden by showing that the avenue chosen by counsel was unsuccessful. White v. Singletary, 972 F.2d 1218, 1220-21 (11th Cir. 1992).

Because the standards under Strickland and AEDPA are both highly deferential, "when the two apply in tandem, review is 'doubly' so." Richter, 562 U.S.

at 105. "Given the double deference due, it is a 'rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.'" Nance v. Warden, Ga. Diag. Prison, 922 F.3d 1298, 1303 (11th Cir. 2019) (citation omitted).

## III. DISCUSSION

### A. Ground One—Failure to Call Anonymous Tipster and "Critical Crime Witnesses"

Leeks argues that trial counsel was ineffective for failing to "investigate and subpoena" the anonymous tipster and "critical crime witnesses." (Dkt. 1 at 5) As noted above, Detective Worley responded to the motel room based on a tip that a "large transaction" of "illegal narcotics" had taken place there. (Dkt. 8-2 Ex. 28, at 34) According to Leeks, counsel should have "confront[ed]" the tipster by calling him as a witness at the suppression hearing and at trial. (Dkt. 1 at 5) The tipster allegedly "could have provided testimony that could've resulted [in Leeks] being charged with the lesser offense of drug possession rather than trafficking" in amphetamine. (Id.) Leeks does not elaborate on this proposed testimony, nor does he name the tipster. (Id.) As for the "critical crime witnesses," Leeks neither identifies them nor describes the testimony they would have given. (Id.) Other than Detective Worley and Leeks, the only "witnesses" to the incident were the man and woman in the motel room. (Dkt. 8-2, Ex. 28, at 35)

The postconviction court correctly rejected this claim for lack of prejudice. (Id., Ex. 21, at 2) Leeks does not describe the substance of the tipster's testimony. Likewise,

even assuming the "critical crime witnesses" were the man and woman in the motel room, Leeks says nothing about what their testimony would have been. Without such information, Leeks cannot establish a "reasonable probability" of a different result had counsel called these persons as witnesses. Strickland, 466 U.S. at 694; see also United States v. Tsoy, No. 21-12644, 2022 WL 3211559, at *4 (11th Cir. Aug. 9, 2022) (petitioner's "failure to demonstrate what the witnesses' testimony would have been means he has not shown prejudice" under Strickland);[3] United States v. Mallard, No. 99-cv-998-AHS, 2000 WL 360237, at *2 (S.D. Ala. Mar. 27, 2000) ("Defendant fails to indicate what the testimony of these individuals would have established or how they would have assisted his defense. Consequently, Defendant has failed to show how the absence of these witnesses' testimony prejudiced Defendant.").

Even if Leeks had alleged the substance of the witnesses' testimony, he still would not be entitled to relief. The burden of establishing prejudice under Strickland "is particularly heavy where the petitioner alleges ineffective assistance in failing to call a witness because often allegations of what a witness would have testified to are largely speculative." McKiver v. Sec'y, Fla. Dep't of Corr., 991 F.3d 1357, 1365 (11th Cir. 2021). For that reason, "a petitioner's own assertions about whether and how a witness would have testified are usually not enough to establish prejudice from the failure to interview or call that witness." Id. Leeks presents no evidence—through an affidavit or otherwise—that the tipster or the "critical crime witnesses" would have

---

[3] The Court notes that "[a]lthough an unpublished opinion is not binding on this court, it is persuasive authority. See 11th Cir. R. 36-2." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000).

testified favorably to the defense. See United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim."). "Without such a showing, [Leeks] cannot demonstrate Strickland prejudice." Afshar v. Sec'y, Dep't of Corr., No. 2:24-cv-826-JES-NPM, 2025 WL 404629, at *5 (M.D. Fla. Feb. 5, 2025) (finding no prejudice from failure to call witness because petitioner did not "offer[ ] [the witness's] sworn testimony detailing what he would have said if deposed or called to testify at trial"); see also Johnson v. Alabama, 256 F.3d 1156, 1187 (11th Cir. 2001) ("[Petitioner] offers only speculation that the missing witnesses would have been helpful. This kind of speculation is insufficient to carry the burden of a habeas corpus petitioner.").

    **B.    Ground Two—Alleged Prosecutorial Misconduct**

Leeks contends that the prosecution engaged in misconduct by presenting "false testimony" from Detective Worley and by leading "the jury [to believe] that [Detective Worley's] testimony was the absolute truth regarding the events leading to [Leeks's] unlawful arrest." (Dkt. 1 at 7) Leeks does not identify the allegedly false portions of Detective Worley's testimony, nor does he explain how the prosecution knew Detective Worley gave "erroneous testimony." (Id.) The Court liberally construes Ground Two as arising under Giglio v. United States, 405 U.S. 150 (1972). See Trepal v. Sec'y, Fla. Dep't of Corr., 684 F.3d 1088, 1108 n.22 (11th Cir. 2012) (noting that

Giglio claims involve "prosecutorial misconduct and a corruption of the truth-seeking function of the trial").

Respondent argues that Ground Two is procedurally defaulted, but the Court need not reach that issue because it fails on the merits. See Dallas v. Warden, 964 F.3d 1285, 1307 (11th Cir. 2020) ("[A] federal court may skip over the procedural default analysis if a claim would fail on the merits in any event."). "To establish a Giglio claim, a habeas petitioner must prove: (1) the prosecutor knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony; and (2) such use was material, *i.e.*, that there is any reasonable likelihood that the false testimony could have affected the judgment." Guzman v. Sec'y, Dep't of Corr., 663 F.3d 1336, 1348 (11th Cir. 2011).

Leeks fails to prove a Giglio violation. He makes no showing that Detective Worley testified falsely. Instead, he simply asserts that the prosecution "knowingly led the [detective] to give erroneous testimony." (Dkt. 1 at 7) "[T]he suggestion that a statement may have been false is simply insufficient [to establish a Giglio violation]; the defendant must conclusively show that the statement was actually false." Maharaj v. Sec'y for Dep't of Corr., 432 F.3d 1292, 1313 (11th Cir. 2005). Even assuming Detective Worley offered false testimony, Leeks presents no basis to conclude that "the prosecution knew, or should have known, of the [alleged] perjury." Ford v. Hall, 546 F.3d 1326, 1331 (11th Cir. 2008). Without any evidence that the prosecution knowingly presented "perjured testimony," Leeks cannot establish a Giglio claim. Davis v. Terry, 465 F.3d 1249, 1253 (11th Cir. 2006).

9

## IV. CONCLUSION

Upon consideration of the foregoing, it is hereby **ORDERED** as follows:

1. Leeks's petition for writ of habeas corpus, (Dkt. 1), is **DENIED**.

2. The Clerk is **DIRECTED** to enter judgment against Leeks and to **CLOSE** this case.

3. Because Leeks neither makes a substantial showing of the denial of a constitutional right nor demonstrates that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues that he seeks to raise, a certificate of appealability and leave to appeal *in forma pauperis* are **DENIED**. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 478 (2000).

**DONE** and **ORDERED** in Tampa, Florida, this 16th day of September 2025.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE